David A. TOMBERS, Respondent,

v.

**CITY OF BROOKLYN CENTER, Relator,**

**Department of Veterans Affairs, Respondent.**

No. C4–99–2055.

Court of Appeals of Minnesota.

May 23, 2000.

Jill Eleanor Clark, Golden Valley, and William J. Mavity, Mavity & Associates, Minneapolis, for respondent David A. Tombers.

Patricia Ytzen Beety, St. Paul, for relator.

Mike Hatch, Attorney General, and Minnesota Department of Veterans Affairs, St. Paul, for respondent Commissioner of Veterans Affairs.

Considered and decided by TOUSSAINT, Chief Judge, PETERSON, Judge, and HUSPENI, Judge.*

## OPINION

TOUSSAINT, Chief Judge.

The Commissioner of Veterans Affairs upheld the conclusion of an administrative law judge (ALJ) that respondent David A. Tombers, a military veteran who was employed by relator as a police officer, had been unlawfully removed from his employment when relator City of Brooklyn Center forced him on indefinite leave without a hearing mandated by the Veterans Preference Act (VPA), Minn.Stat. § 197.46. The commissioner concluded that relator owed respondent back pay from the date of his forced separation until the Veterans Preference Board issued its decision. The commissioner also determined that relator was not permitted to offset wages earned, unemployment compensation, or Public Employees Retirement Association (PERA) benefits. We affirm as to respondent's entitlement to payment of back

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

wages, but reverse as to the failure to offset wages earned, and remand.

## FACTS

Respondent David A. Tombers, an honorably discharged veteran, began working as a police officer for relator City of Brooklyn Center in 1991. In 1992, Tombers suffered an on-the-job injury. In 1994, Tombers was removed from patrol duty after his injury resulted in a degenerative bone condition that required hip-replacement surgery. In July 1995, Tombers returned to patrol duty after his personal physician indicated that he could perform his police-officer duties without restriction.

On June 2, 1998, Tombers had his annual check-up with his physician. He told his physician that he was experiencing hip pain arising from performing his everyday police-officer duties. His physician wrote a letter indicating that

> [Tombers] has been able to return to work but with my reluctant consent and now it is obvious that he should not work as a police patrolman anymore. I believe he is disabled to work as a patrolman on account of his bilateral hip replacement arthroplasties.

On June 3, 1998, Tombers presented this letter to his Police Chief, although Tombers felt that he was fully capable of performing all police officer duties. The Police Chief removed Tombers from duty immediately, ordered him to go home, and instructed him to use his paid vacation and sick time.

On July 2, 1998, the city issued a notice to Tombers that it was going to terminate his employment due to his inability to physically perform the duties of a police officer and notified him that he had a right to contest the action under the VPA. By this time Tombers had exhausted his paid vacation and sick time.

In August 1998, Tombers filed a petition with the Department of Veterans Affairs seeking a determination that he had been unlawfully removed. Tombers subsequently filed a motion for summary disposition. In August 1999, an ALJ granted Tombers' motion and determined that the city had violated the VPA by removing Tombers on June 3, 1998, without first notifying him of his right to a VPA hearing. The Commissioner of Veterans Affairs adopted the ALJ's conclusions and recommendations. The commissioner ordered the city to restore Tombers'

> vacation leave and sick time balances to the levels they were on June 2, 1998, augment those balances with leave time that would have been earned since, pay [Tombers'] backpay in the usual and ordinary amounts he would have earned had his employment status not changed, pay [Tombers'] frontpay through the date of the order of the Veteran's Preference Panel, and restore any benefits (including pension contributions) that were not paid due to the discharge of [Tombers].

The city appeals.

## ISSUES

I. Was Tombers entitled to payment of back wages and benefits during the pendency of the veterans preference hearing?

II. Was the city entitled to offset Tombers' wages from another job, worker's compensation, and PERA benefits from his back wages?

## ANALYSIS

Summary disposition is the administrative equivalent of summary judgment. Minn. R. 1400.5500(K) (1998). Summary judgment is to be granted

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

Minn. R. Civ. P. 56.03.

On appeal from summary judgment, we ask two questions: (1) whether any genu-

ine issues of material fact exist; and (2) whether the lower court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The evidence is to be viewed in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

## I.

█ The VPA provides that a veteran discharged under honorable circumstances may be removed from public employment only "for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing." Minn. Stat. § 197.46.

[A] veteran is removed from his or her position or employment when the effect of the employer's action is to make it unlikely or improbable that the veteran will be able to return to the job.

*Myers v. City of Oakdale (Myers II·),* 409 N.W.2d 848, 850–51 (Minn.1987) (police officer put on indefinite medical leave was effectively "removed" from his job and, as a veteran, was entitled to a hearing pursuant to the VPA). In general, a public employer is responsible for a veteran's salary from the date of suspension from employment until discharge. *See Mitlyng v. Wolff,* 342 N.W.2d 120, 123 (Minn.1984) (holding VPA entitles a veteran to be paid until discharge occurs).

█ The city argues that Tombers is not entitled to back pay based on *Myers v. City of Oakdale (Myers III),* 465 N.W.2d at 702 (Minn.App.1991). *Myers III,* however, is distinguishable and should be viewed narrowly. In *Myers III,* Myers admitted that at no time was he fit enough to report for work. *Id.* at 706. Myers requested medical leave due to a serious injury and used his accrued leave time to maintain his employment status. *Id.* at 703. Once he exhausted his paid leave time, the employer offered Myers a choice between taking an authorized unpaid leave or being considered absent without leave (AWOL). *Id.*

Myers· requested and was granted an unpaid leave of absence. *Id.* Myers then attempted to recover back pay, but was denied recovery because he was on voluntary, unpaid leave, and "was medically unfit to perform the duties of police officer." *Id.* at 706. This court found that:

If Myers were to receive back wages from the time of the notice of the hearing until the hearing concluded, on these facts, he would receive wages that he had no possibility of earning on his own, a salary would be created where none existed, and he would be provided a windfall double recovery.

*Id.*

█ Here, however, Tombers: (1) was involuntarily sent home; (2) was told to use his vacation time and sick leave; and (3) held himself out to be fit to work as a police officer. These facts do not fall within the narrow exception of *Myers III.* The general rule entitles Tombers to a continuing salary until a formal decision has been made after the hearing under the VPA.

## II.

█ The city argues that, even if Tombers is entitled to back pay, excessive damages were awarded, and an offset is necessary. The purpose of the VPA is to provide security in public employment, not double recovery. *Lewis v. Minneapolis Bd. of Educ.,* 408 N.W.2d 905, 910 (Minn. App.1987), *review denied* (Minn. Sept. 23, 1987). To avoid double recovery, it is proper to offset the amount the employer owes by the amount the employee earned during the relevant period. *Id.*

█ The city argues that Tombers' receipt of PERA and worker's compensation must be offset. Tombers, however, provided evidence that if he is awarded back pay he may be required to repay worker's compensation and PERA. The city did not provide evidence to refute these claims. The city has failed to prove

that PERA or worker's compensation are offsets under these facts.

A veteran, however, is required to reduce his claim for wages by the amount he earned in similar employment. *See Pawelk v. Camden Twp.*, 415 N.W.2d 47, 52 (Minn.App.1987) (amount earned in alternative wages subtracted from back pay); *Henry v. Metropolitan Waste Control Comm'n*, 401 N.W.2d 401, 406 (Minn. App.1987) (back pay reduced by amount that could have been earned in employment of like kind or grade). Tombers obtained full-time employment with the Anoka County Airport as a desk clerk during his improper removal. The ALJ erred in failing to offset Tombers' wages from the back pay. Therefore, we remand with directions to deduct Tombers' wages from the back pay.

## DECISION

Minn.Stat. § 197.46 entitled Tombers to compensation through his VPA hearing. Wages earned in a position of employment, which would otherwise not be available, are required to be offset against the back pay award.

**Affirmed in part, reversed in part, and remanded.**